# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued May 7, 2026          Decided August 11, 2026

No. 24-3067

UNITED STATES OF AMERICA,
APPELLEE

v.

EDWARD L. WILLIAM, ALSO KNOWN AS EDWARD WILLIAMS,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:97-cr-00064-1)

---

*Isra Bhatty*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Tony Axam Jr.* and *Celia Goetzl*, Assistant Federal Public Defenders, entered appearances.

*Simran Dhillon*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeanine Ferris Pirro*, U.S. Attorney, and *Chrisellen R. Kolb* and *Daniel J. Lenerz*, Assistant U.S. Attorneys. *Eric Hansford*, Assistant U.S. Attorney, entered an appearance.

2

Before: KATSAS, RAO, and CHILDS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*:  Edward Williams pleaded guilty to knowingly possessing a firearm as a convicted felon. Through a collateral attack on his sentence, Williams asserts a procedurally defaulted claim that the plea was invalid because he was unaware that knowledge about his predicate conviction was an essential element of the offense to which he pleaded guilty.  In large measure, the case for excusing the default depends on the proposition that Williams, who served more than two years of imprisonment for the predicate offense, did not know that it was punishable by more than one year of imprisonment.  The district court was unpersuaded on this point.  So are we.

I

A

In 1994, Edward Williams pleaded guilty in D.C. Superior Court to one count of attempted possession of cocaine with intent to distribute it and one count of attempted sodomy.[1] The Superior Court imposed concurrent sentences of three years on the drug count and one year on the sodomy count. Williams was imprisoned for 26 months and then paroled in July 1996.

In January 1997, Williams was arrested for possessing a concealed handgun.  At that time, he was under supervision for his cocaine offense and for a separate misdemeanor gun

---

[1] We refer to the appellant as Edward Williams.  As the case caption reflects, he is sometimes known as Edward William.  His prior cases contain captions reflecting both spellings.

offense. Federal prosecutors charged Williams with one count of possessing a firearm as a convicted felon and one count of possessing ammunition as a convicted felon, both in violation of 18 U.S.C. § 922(g)(1). The charges were predicated on the prior felony drug conviction. Williams pleaded guilty to the firearm count, while reserving his right to appeal the denial of a motion to suppress. The district court sentenced Williams to 51 months of imprisonment followed by three years of supervised release. Williams appealed the conviction and sentence, which we affirmed. *United States v. William*, No. 97-3150, 1998 WL 388505 (D.C. Cir. May 22, 1998). On appeal, Williams made no argument that his guilty plea was unknowing or otherwise invalid.

In 2003, while still on supervised release for his section 922(g) offense, Williams shot three people, including a police officer. For those crimes, he was convicted in Superior Court and received a 45-year sentence. In addition, the district court revoked his supervised release and imposed an additional two years of incarceration to run consecutively to his other sentences. Williams is scheduled to be released in 2046.

B

Long after Williams pleaded guilty to a section 922(g)(1) offense, the Supreme Court clarified the *mens rea* requirement for that crime. Section 922(g)(1) makes it unlawful for any person "convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm or ammunition, and section 924(a)(8) imposes criminal liability on anyone who "knowingly violates" section 922(g). In *Rehaif v. United States*, 588 U.S. 225 (2019), the Supreme Court held that this knowledge requirement extends not only to possession of the firearm or ammunition, but also to the defendant's own status as someone convicted of a qualifying

predicate offense. *Id.* at 237. So, to prove a violation of section 922(g)(1) after *Rehaif*, the government "must prove not only that the defendant knew he possessed a firearm, but also that *he knew he was a felon* when he possessed the firearm." *Greer v. United States*, 593 U.S. 503, 505–06 (2021).

Following *Rehaif*, Williams moved the district court to vacate his federal sentence. He argued that his guilty plea was unknowing because he had never been advised that knowledge of his status as a convicted felon was an essential element of criminal liability under section 922(g). Williams claimed that, when he possessed the firearm, he believed that his drug conviction was a juvenile offense that had already been expunged. So, Williams claimed, he did not know that he was then a convicted felon, and he would not have pleaded guilty had he been properly advised about the elements of a section 922(g) offense. Williams requested an evidentiary hearing on the question of his knowledge and plea decision.

The district court denied the motion without an evidentiary hearing based on an unexcused procedural default, and it declined to issue a certificate of appealability. *United States v. Williams*, No. 97-cr-064, 2024 WL 1299574 (D.D.C. Mar. 27, 2024). Williams appealed, and this Court granted the certificate. *United States v. William*, No. 24-3067, 2025 WL 1122442 (D.C. Cir. Apr. 14, 2025). On appeal, we review *de novo* questions of procedural default, *United States v. Hicks*, 911 F.3d 623, 626 (D.C. Cir. 2018), and we review for abuse of discretion the denial of an evidentiary hearing, *United States v. Baxter*, 761 F.3d 17, 24–25 n.5 (D.C. Cir. 2014).

II

We agree with the district court that Williams has no valid excuse for procedurally defaulting his challenge to the guilty

plea. Moreover, the district court permissibly reached this conclusion without an evidentiary hearing.

A

A federal prisoner may file a motion to vacate his sentence on the ground that it was unconstitutionally imposed. 28 U.S.C. § 2255(a). Such a motion, which functions as a collateral attack on the sentence, is no substitute for an appeal. *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992). To obtain relief under section 2255, the prisoner must establish that his sentence rests on a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). That bar is "a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

Williams contends that his sentence is unconstitutional because his guilty plea was unknowing. He argues that, because he was not told that knowledge of his status as a convicted felon was an element of criminal liability under section 922(g)(1)—as *Rehaif* later held—he did not receive "real notice of the true nature of the charge against him." *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). [2] Williams defaulted this argument by not raising it in the direct appeal of his sentence. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). Moreover, the claim is "doubly defaulted" because Williams also failed to raise it at sentencing. *Hicks*, 911 F.3d at 627. To overcome the default and have his claim heard on

---

[2] The government does not dispute that *Rehaif* applies retroactively to cases on collateral review, so we have no occasion to consider that question in this case.

collateral review, Williams must show either (1) cause for the default and prejudice from the error or (2) actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). We conclude that he can show neither.

1

The "'showing of prejudice' required to overcome procedural default on collateral review 'is significantly greater than that necessary' to establish plain error on direct review." *United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003) (quoting *Murray v. Carrier*, 477 U.S. 478, 493–94 (1986)). Williams must show "not merely that the errors" in his guilty plea "created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage," producing an "error of constitutional dimensions." *Id.* (quoting *Frady*, 456 U.S. at 170). Specifically, to show prejudice from a guilty plea allegedly tainted by a *Rehaif* error, Williams had the "burden of showing that, if the District Court had correctly advised him of the *mens rea* element of the offense, there is a reasonable probability that he would not have pled guilty." *Greer*, 593 U.S. at 508 (cleaned up). This is an "uphill climb" because a felon "ordinarily knows he is a felon." *Id.* "That simple truth is not lost upon juries," so a defendant would not likely forgo a plea deal to try the question whether he knew his own status as a convicted felon. *Id.* at 508.

The precise *mens rea* question here is whether Williams, when he possessed the firearm in January 1997, knew that he had been "convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). One fact alone makes it all but certain that Williams had such knowledge: He received a *three*-year sentence for the predicate cocaine offense, and he served more than *two* years in prison for that offense before being released

on parole. As the Seventh Circuit has explained, there is no "plausible ignorance defense" under *Rehaif* for a "defendant who served more than a year in prison on a single count of conviction." *United States v. Williams*, 946 F.3d 968, 974 (7th Cir. 2020). Other courts of appeals agree. *See United States v. Innocent*, 977 F.3d 1077, 1083 (11th Cir. 2020); *United States v. Caudle*, 968 F.3d 916, 922 (8th Cir. 2020); *United States v. Hicks*, 958 F.3d 399, 401–02 (5th Cir. 2020); *United States v. Benamor*, 937 F.3d 1182, 1189 (9th Cir. 2019).

Circumstantial evidence confirms this obvious point. Although Williams was only 16 years old at the time of his predicate drug offense, he was prosecuted as an adult in the Criminal Division of the D.C. Superior Court, not in some family or juvenile court. A grand jury indicted him on charges that included two counts of rape in addition to the cocaine offense. In three Superior Court appearances, he was arraigned, pleaded not guilty, and demanded a jury trial. His eventual Superior Court plea deal explicitly stated that the cocaine offense was a "felony." App. 106. Likewise, his Superior Court docket sheet was stamped with the word "**FELONY**" in enlarged, bold, all-capital letters. *Id.* at 99. In district court, his pre-plea motion to modify release conditions acknowledged a prior "felony drug offense." ECF Doc. 14 at 2. In his federal plea colloquy, Williams acknowledged that his predicate drug conviction was for "a crime punishable by imprisonment for a term exceeding one year." *Id.* at 269, 273; *see United States v. Henderson*, 108 F.4th 899, 903–04 (D.C. Cir. 2024) (relying on plea agreement to find that defendant knew his conviction was for a felony). And Williams did not challenge the criminal-history calculation in his presentence report, which counted the cocaine offense as a felony conviction for which Williams had received a three-year sentence. Having served more than two

years on that offense, Williams plainly knew that it entailed a prison sentence exceeding one year.

Williams' primary response is to invoke the D.C. Youth Rehabilitation Act (YRA), which at the time provided increased sentencing flexibility for individuals under the age of 22 who were "convicted" of adult crimes other than murder. D.C. Code § 24-801(6) (1996). Invoking the YRA, the Superior Court ordered Williams committed to the custody of the Attorney General for "treatment and supervision" for three years on his drug offense. App. 108; *see* D.C. Code § 24-803(b) (1996). Under this criminal sentence, Williams served his time in juvenile blocks of the D.C. Jail and Lorton Prison. Williams suggests that such sentences did not count as terms of "imprisonment" under section 922(g). But even apart from the facial implausibility of that claim, the YRA expressly provided that its terms of "treatment and supervision" counted as a "penalty of imprisonment" bounded by the statutory maximum for the "offense" of conviction. D.C. Code § 24-803(b) (1996). And in any event, section 922(g)(1) is keyed to whether the defendant's conviction *could have been* punished by "imprisonment for a term exceeding one year." At the time, unlawful possession with intent to distribute cocaine was punishable by up to 30 years in prison, *see* D.C. Code § 33-541(a)(1), (a)(2)(A) (1993)—and the YRA's treatment-and-supervision option was discretionary, *see id.* § 24-803(b).

Williams further suggests that the YRA automatically expunged his drug conviction upon his release from prison. But the YRA provided for covered offenders to be "released conditionally under supervision whenever appropriate." *Id.* § 24-804(a) (1996). It then permitted them to be "unconditionally discharged" after one year "from the date of conditional release." *Id.* § 24-804(b). And it provided for the

conviction to be set aside upon "unconditional discharge." *Id.* § 24-806(a) (1996). These provisions afford no help to Williams, who was still on parole—*i.e.*, "conditional release"—when he committed his section 922(g) offense in January 1997, barely six months after his release from prison on the drug offense. Williams also asserts that his attorney advised him that the drug conviction would be automatically expunged "upon his release" from prison. Br. for Appellant at 23. But Williams provides no record support for that claim, and even his own affidavit is silent on this point. Moreover, it is hard to accept that Williams believed his conviction had already been expunged while he remained *on parole*, which involved reporting to a parole officer who monitored his employment status and required him to submit to drug testing.

Finally, Williams offers his own 2021 affidavit, which asserts that he did not know in 1997 that the drug offense for which he had served 26 months in prison was punishable by a term of imprisonment exceeding one year. Moreover, the affidavit continues, Williams would have gone to trial had he been properly advised that he could avoid criminal liability under section 922(g) on that basis. We decline to credit the affidavit. "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017). Here, no contemporaneous evidence indicates that Williams would have walked away from the plea deal to litigate whether he knew his own felony status. Instead, as explained above, it is virtually impossible to conclude that Williams was unaware that his drug conviction was an offense punishable by more than one year of imprisonment. As the district court aptly summarized: "For Mr. Williams to be correct about his understanding of his felony conviction, one would have to accept that he did not realize he was prosecuted as an adult, did not read his plea

offer, did not glance at his docket sheet, did not notice he was imprisoned, and forgot he was on parole despite reporting regularly to his parole officer." *Williams*, 2024 WL 1299574, at *1. Like the district court, we are unpersuaded.[3]

2

For similar reasons, Williams cannot establish his actual innocence. To do so, he must show that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (cleaned up). The same problem that dooms the claim that Williams would have taken a *Rehaif* defense to trial also dooms the claim that he would have won at trial. Reasonable jurors would most likely conclude that, after spending over two years in prison, Williams knew that he had been convicted of an offense punishable by more than one year in prison. After all, "[f]elony status is simply not the kind of thing that one forgets." *Greer*, 593 U.S. at 508 (cleaned up).

B

The district court permissibly denied Williams an evidentiary hearing on his motion to vacate his sentence. Such a hearing is unnecessary if the record "conclusively show[s] that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Likewise, a hearing is unnecessary if the petitioner "does not point to any information outside the record that would have substantially assisted the district court in its disposition." *United States v. Toms*, 396 F.3d 427, 437 (D.C. Cir. 2005); *see also Pollard*, 959 F.2d at 1031. Finally, "[o]ur cases have stressed that a district judge's decision not to hold an

---

[3] Because Williams has not shown prejudice from any *Rehaif* error in his plea, we need not consider whether he can show cause to excuse his procedural default. *See Henderson*, 108 F.4th at 904.

11

evidentiary hearing before denying a § 2255 motion is generally respected as a sound exercise of discretion when the judge denying the § 2255 motion also presided over the trial in which the petitioner claims to have been prejudiced." *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996).

Under these standards, no hearing was necessary. The district judge considering the section 2255 motion had also presided over Williams' federal plea colloquy and sentencing and so was intimately familiar with his case. Williams points to no new evidence that an evidentiary hearing might develop. And as the district court ably explained, the evidence that Williams knew he had been convicted of a crime punishable by more than one year was overwhelming.

III

For these reasons, we affirm the denial of Williams' section 2255 motion.

*So ordered.*